**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Irons            }
}
}      Docket No. 94-6-04 Vtec
}
}

Decision and Order

Appellants Paul and Margaret Irons appealed from a decision of the Development Review Board (DRB) of the City of Barre, granting conditional use approval to the City for the construction of a new public safety building. Appellants are represented by Paul S. Gillies, Esq.; Appellee-Applicant City of Barre is represented by Oliver L. Twombly, Esq. The Thomas J. Mowatt Revocable Trust is represented by Douglas R. Marden, Esq. but did not appear at the merits hearing or file any post-trial memoranda. Interested person William A. Giblin initially entered his appearance but did not participate in the pre-trial proceedings or merits hearing, or file any post-trial memoranda.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

The City of Barre proposes to construct a Public Safety (fire and police) building, with associated parking and roadways, and including a public recreation area, in a Planned Residential zoning district between Fourth and Fifth Streets, one block east of North Main Street. The building site is at an elevation approximately six feet above that of North Main Street; it is proposed to be backed up against the side of a steep hillside that continues upwards to the east. Access onto the project property is proposed to be via both Fourth and Fifth Streets, each of which is proposed to carry two-way traffic with no on-street parking. The building is designed so that it is anticipated that the fire and emergency equipment would generally use Fourth Street. The on-site circulation is designed with one-way traffic (from south to north) through the parking area directly in front of the building, and two-way traffic through the larger public parking area away from the building along the westerly edge of the property. This two-way circulation provides an alternative access to and from the building if either Fourth Street or Fifth Street is temporarily obstructed. Pedestrian access to the property from North Main Street is proposed to be by a sidewalk running along the southerly side of Fourth Street and by a sidewalk running along the northerly side of Fifth Street.

Appellants Irons' property is located on North Main Street and the northerly side of Fourth Street. The Mowatt Trust property is located on North Main Street and the southerly side of Fourth Street. The public right-of-way for Fourth Street is 40 feet wide, and runs very close to the Irons building. At the present time the entire width of Fourth Street between the Irons" building and the Mowatt Trust building is paved. Public parking spaces are available along the easterly side of North Main Street all the way from First Street to a little past Fifth Street. No signage advises the public that parking is allowed, and although the curb is marked in yellow where parking is prohibited, no allowed parking spaces are demarcated on the pavement. The project plans propose to define the traveled way of Fourth Street as 27 feet in width within that right-of-way, with a 5 1/2 -foot-wide sidewalk along the south side of Fourth Street leading to the facility.

The Irons building has a front on-site parking area capable of housing nine or ten vehicles, with access from North Main Street, and a rear on-site parking area capable of housing at least that

many vehicles, with access from Fourth Street. Appellant Paul Irons testified that the property could accommodate 23 spaces on-site. The rear on-site parking area is shown as 51 1/2 feet by 93 feet in area on a site plan filed in connection with a permit granted to the property in 1990. However, not all the rear portion of the property has been excavated to the level of the rear on-site parking area, nor has it been paved, making it difficult to tell how many vehicles could be accommodated in the rear on-site parking area if it were improved, leveled and paved. The Irons parcel would gain an appreciable amount of parking and maneuvering room for the transmission business if the rear lot were excavated to or near the Irons property boundary.

The rear section of the Irons building is a garage; the garage building and rear parking area are in use by a transmission repair business. It has two large garage bay doors facing Fourth Street and another facing the front parking area. It is entitled to ten parking spaces under its lease.

The front section of the Irons building houses a health clinic on the ground floor, with a handicapped ramp to an entrance on the Fourth Street side of the building, and short term apartments upstairs. The clinic is entitled to have eight on-site parking spaces under its lease; the zoning regulations require five on-site parking spaces for the apartments.

A site plan filed with 1990 application by a predecessor owner for approval of the apartments proposed six spaces of head-on parking on Fourth Street, extending into the right-of-way. The site plan approval was granted, but subject to one condition: "a provision of parallel parking in spaces abutting Fourth Street," that is, disapproving the proposal for head-on parking. The building is too close to the edge of the Fourth Street right of way for there to be room for parallel parked cars to have fit entirely on the Irons property outside the right-of-way adjacent to the front building. Approximately four parallel parking spaces would have been accommodated along Fourth Street within the right-of-way adjacent to the front building.

Nevertheless, users of the building have been accustomed to park head-on to the Irons building, within the Fourth Street right-of-way. People using Fourth Street also park head-on in marked parking spaces on the Mowatt Trust property just outside the Fourth Street right-of-way, facing the Mowatt Trust building on the south side of Fourth Street. The transmission shop also uses the Fourth Street right-of-way for maneuvering disabled vehicles into and out of the work space garage bays. Tow trucks also leave disabled vehicles for the transmission shop after hours in or near the Fourth Street right-of-way; this practice would not be allowed after the project is in use. The clinic also has an agreement with the Mowatt Trust property to use parking spaces on its lot.

The project is expected to increase traffic on Fourth Street by approximately 7 or 8 vehicle trips an hour, which is a rate of use that Fourth Street can safely handle. Non-emergency traffic entering Fourth Street or exiting the facility onto Fourth Street will be traveling at a sufficiently low rate of speed to safely avoid any disabled vehicles being maneuvered in front of Appellants" property. Because Fourth Street will have two lanes, non-emergency traffic will be able to stop or pull over to allow emergency vehicles to pass by. Emergency vehicles intending to leave the facility via Fourth Street would be able to drive through the westerly parking area to exit on Fifth Street in the unlikely event that Fourth Street is entirely blocked by traffic or transmission shop activities. A maximum of approximately three emergency calls occur per day in the daytime hours; a maximum of approximately five emergency calls occur per day in the nighttime hours. Fourth Street will be able to safely handle that volume of emergency traffic, especially given the relatively small numbers of emergency calls in the daytime hours when the transmission shop may be expected to be in operation.

Appellants argue that the proposed public safety project will adversely affect traffic on Fourth Street, that it will adversely affect the character of the neighborhood as it pertains to Fourth Street and its access to North Main Street, and that it compromises the rights of the Irons property to the parking allowed in the 1990 site plan approval.

With appropriate additional conditions described below, the proposed public safety project will not adversely affect traffic on Fourth Street. As long as the transmission shop staff and other drivers and pedestrians using Fourth and Fifth Streets are alerted in advance that emergency vehicles will be traveling along Fourth or Fifth Streets, conflicts between those vehicles and other users of Fourth or Fifth Streets will not pose a safety hazard. If pedestrian access to the handicapped ramp on the north side of Fourth Street is provided, the proposed vehicular use of Fourth Street will not pose a safety hazard to people using wheelchairs. If the rear parking area of Appellants" property is enlarged, the transmission shop will be able to schedule, place and maneuver disabled vehicles to avoid unnecessary use of the Fourth Street right-of-way by unattended disabled vehicles.

With appropriate additional conditions described below, the proposed public safety project will not adversely affect the character of the neighborhood as it pertains to Fourth Street and its access to North Main Street. The character of the neighborhood is a mix of residential uses on the side streets and small and large commercial uses along North Main Street, with some industrial uses and large parking areas along the westerly side of North Main Street. The traffic and activity created by these uses is compatible with that expected from the proposed facility. The appearance of the proposed facility is well designed to be attractive and compatible with the other uses in the area and with the brick-and-granite characteristics of downtown Barre in general. With the conditions as to the warning lights, parking and sidewalks described below, it will not adversely affect the character of the area.

While the City is correct that this court has no jurisdiction of a private property dispute between the parties, nor of a dispute over whether a private property owner can obtain vested rights to parking on a city street, we note that the 1990 site plan approval only allowed parallel parking adjacent to Appellants" front building, regardless of the argument over whether that parking could have been within or outside the Fourth Street right-of-way. That is, even if Appellants are correct that the requirement for parking " adjacent to Fourth Street" allowed parking within the right-of-way, there is no question that only approximately eighty feet of parallel parking, or approximately four spaces, was available in that configuration. Many more than that number of spaces goes unused at present along the easterly side of North Main Street within a few blocks of Fourth Street. With appropriate additional conditions described below, the proposed public safety project will not adversely affect the amount of on-site parking available to Appellants" property, nor affect pedestrian and wheelchair access by users of Appellants" property to and from public parking spaces on North Main Street and on the public safety project property.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicant City of Barre" s application meets the contested criteria and is granted, with the following additional conditions (in addition to any conditions already imposed by the DRB, which were not placed in evidence):

1. Appellee-Applicant City shall mark the available parking spaces on the pavement (not just on the curbing) on the east side of North Main Street between First Street and the end of the available parking spaces to the north of Fifth Street, and shall provide appropriate signage indicating any existing regulations applicable to such parking (e.g. if there are any rules as to overnight parking during snow emergencies).

2. Appellee-Applicant City shall provide a handicapped-accessible sidewalk along the north side of Fourth Street from the sidewalk on North Main Street to the ramp on the Fourth Street side of Appellants" building, so that a user of the ramp is able to make a smooth connection from the sidewalk onto the ramp.

3. Appellee-Applicant City shall provide a visual as well as an audible alarm to alert the workers at the Fourth Street doors of the transmission garage whenever emergency (fire or ambulance) equipment is preparing to travel out of the public safety facility.

4. Appellee-Applicant City shall provide a blinking light in association with a sign to the effect of " emergency equipment exiting" that can be activated from the public safety facility and from on board each fire or emergency vehicle, to be located on Fourth Street close to its intersection with North Main Street, and shall activate the light whenever emergency (fire or ambulance) equipment is preparing to travel out of the public safety facility via Fourth Street.

5. Appellee-Applicant City shall provide a blinking light in association with a sign to the effect of " emergency equipment exiting" that can be activated from the public safety facility and from on board each fire or emergency vehicle, to be located on Fifth Street close to its intersection with North Main Street, and shall activate the light whenever emergency (fire or ambulance) equipment is preparing to travel out of the public safety facility via Fifth Street.

6. Without delaying the commencement of site work elsewhere on the project property, on or before thirty days from the date of this order, Appellants and Appellee-Applicant City shall discuss whether Appellants wish to expand the rear parking area on Appellants" property to their easterly and/or northerly property lines. If so, Appellee-Applicant City shall have its site engineer incorporate into the site plan for the facility any excavation on the Irons property and any retaining wall to be constructed on the City property, including any incorporated drainage, necessary to expand the rear parking area on the Irons parcel to those limits. Any such excavation and retaining wall construction shall be at the expense of Appellee-Applicant City; any paving or other work within the rear parking area of Appellants" property is not included in this condition, but may be done at Appellants" expense in conjunction with this construction.

Done at Barre, Vermont, this 27th day of July, 2004.

_____

Merideth Wright

Environmental Judge